


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| CARRIE CHRISTY DELEON | CIVIL ACTION NO. 04-1376 |
|---|---|
| versus | JUDGE WALTER |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Carrie DeLeon ("Plaintiff") applied for Disability Insurance Benefits and Supplemental Security Income payments. She was thirty-one years old at the time ALJ Larry Butler decided her case. Plaintiff has an eighth grade education and past work experience as a cosmetologist, security guard, cashier/checker and waitress. She claims that she became disabled in October 1997 due to multiple personalities, a back injury and asthma.

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for Disability Insurance Benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not working (step one) and suffered from back pain, asthma, post-traumatic stress disorder, poly-substance abuse, a history of impulse control disorder, major depressive disorder, and

personality disorder, impairments that are "severe" within the meaning of the regulations (step two) but not severe enough to meet or medically equal a listed impairment (step three) that would direct a conclusion of disabled.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). He determined that she could perform a full range of unskilled medium work, reduced by an inability to interact appropriately with the general public. He then relied upon the testimony of vocational expert ("VE") Joni Crayton to find that Plaintiff could not perform her past relevant work (step four) but could perform other jobs that exist in the economy (step five). The Appeals Council denied a request for review, and Plaintiff filed this judicial appeal pursuant to 42 U.S.C. § 405(g). For the reasons that follow, it is recommended that the the Commissioner's decision to deny benefits be reversed and the case be remanded for further proceedings.

**Issue on Appeal**

Plaintiff's single assignment of error is that the ALJ's hypothetical question failed to consider all of Plaintiff's *mental health* limitations. Testimony from a VE may provide substantial evidence with respect to the inquiries at step five, but reversal may be required if the ALJ poses a defective hypothetical question to the VE. "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or

suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." Bolling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). See also Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001).

**Analysis**

### A. The First Decision

Plaintiff's claim was first denied by the ALJ in May 2002. He denied benefits on that occasion based on an application of the Medical-Vocational Rules for a person capable of performing medium work. Tr. 43-53. The Appeals Council vacated the decision and remanded the case with instructions to obtain additional evidence concerning the claimant's mental impairments, evaluate the mental impairments in accordance with the regulations, provide rationale with specific references to record evidence to support any assessed limitations and obtain evidence from a VE. Tr. 68-71.

### B. The Medical Evidence

The evidence relevant to Plaintiff's mental health includes a consultative report issued before the first decision and a consultative report issued after remand from the Appeals Council. The earlier consultation was conducted by clinical psychologist Susan Tucker, Ph.D. She noted that Plaintiff had a history of impaired mental health, but all treatment had been by a general practitioner and on an outpatient basis, with no hospitalization or

specialized mental health treatment. Plaintiff nonetheless had a history of a suicide attempt at age 12, hallucinations and delusional thinking. She demonstrated marginal ability to focus her concentration over brief periods or to comprehend verbal abstractions. She displayed a minimal degree of insight and social judgment. Her level of expressiveness displayed during the examination was found to be exaggerated and dramatic. Dr. Tucker diagnosed substance abuse, as well as borderline personality disorder with anti-social personality features. Dr. Tucker's prognosis was guarded, and she recommended mental health counseling or psychiatric management. Tr. 152-54.

Clinical psychologist Webb Sentell, Ph.D., conducted a post-remand consultative examination in April 2003. Plaintiff reported that she had been hospitalized at Willis-Knighton Behavioral Medicine for wanting to kill herself and others. She reported a history of childhood sexual and physical abuse and the loss of custody of her own three children due to her mental problems. She denied current use of drugs or alcohol. Dr. Sentell diagnosed post-traumatic stress disorder, major depressive disorder (severe with psychotic features; in partial remission) and personality disorder, NOS. Plaintiff's GAF scale was assessed at 60, which indicates moderate difficulty in social, occupational or school functioning, such as having few friends and experiencing conflicts with co-workers. Dr. Sentell concluded that Plaintiff "cannot be expected to work well with other people, as evidenced by giving a haircut client a Mohawk because she became angry." Tr. 225-26.

Dr. Sentell also completed a worksheet for assessing the ability of the claimant to do work-related activities. He indicated that Plaintiff had only a *slight* restriction in her ability to understand, remember and carry out short, simple instructions, but he found a *moderate* restriction of her ability to remember or carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with co-workers, or respond appropriately to changes in a routine work setting. A more serious rating of a *marked* limitation was assessed for the abilities to (1) interact appropriately with the public, (2) interact appropriately with supervisors and (3) respond appropriately to work pressures in a usual work setting. In support of these conclusions, Dr. Sentell noted that Plaintiff was "very impulsive, curses, fights on job," and had a history of shaving parts of a client's head in anger. Tr. 227-29.

### C. Question to the VE

The ALJ, in his written decision, discussed the reports from both Dr. Tucker and Dr. Sentell. Tr. 15-16. On two occasions, the ALJ stated (erroneously) that Dr. Sentell "indicated that [plaintiff] had no marked functional limitations except for an inability to work well with other people." Tr. 16 & 19. The ALJ also posed a written hypothetical question to the VE that did not reflect any other mental health limitations. He asked the VE to assume an RFC "for medium work, reduced by the inability to interact appropriately with the general public." Tr. 147. The VE opined that, because of the inability to interact appropriately with the public, Plaintiff could not perform her past jobs such as cosmetologist or security guard.

She opined that Plaintiff could, with the assumed limitations, perform the work of a cook helper, kitchen helper or cleaner/housekeeper. Tr. 148. The ALJ based his finding of not disabled on that testimony. Tr. 20-21.

### D. Remand is Required

The ALJ's description of Dr. Sentell's assessment as including no marked limitations except an inability to "work with people" may fairly include Dr. Sentell's indication of marked limitations in interacting with the public and in interacting with supervisors. The limitation posed to the VE ("an inability to interact appropriately with the general public") could also be said to fairly encompass those two limitations. But the description of Plaintiff's limitations in the written decision and the hypothetical to the VE both omit Dr. Sentell's finding of a marked limitation in responding appropriately to work pressures in a usual work setting. The court does not imply that the ALJ was required to find such a limitation existed and affected Plaintiff's RFC just because Dr. Sentell described it as marked, but when the ALJ accepted without hesitation the other limitations so described by Dr. Sentell, he should have at least discussed his reasons for not treating equally the other suggestion of marked limitation. Perhaps the ALJ had good reasons to treat the suggested limitations differently, but the current written decision does not explain any such reasons.

Also, the ALJ also did not specifically discuss in his decision why he omitted mention of Dr. Sentell's finding of a *moderate* limitation in the ability to interact appropriately with co-workers, respond appropriately to changes in a routine work setting, understand,

remember and carry out detailed instructions, and make judgments on simple work-related decisions. Neither party has cited authority for the proposition that a limitation must be deemed of marked severity before it may give rise to a degree of impairment that must be considered in a hypothetical question if the answer to that question is to provide substantial evidence for the decision. Again, that is not to say that the ALJ was bound to accept Dr. Sentell's findings, but the ALJ's written decision does not include valid reasons for rejecting or discounting the other limitations suggested by Dr. Sentell. The ALJ did discuss Plaintiff's mental health at length when assessing whether she satisfied the requirement of a listing (see Tr. 17-18), but that discussion does not automatically translate to an explanation of why several limitations suggested by Dr. Sentell were omitted from both the description of Dr. Sentell's assessment and the hypothetical question posed to the VE. Under the circumstances, the court cannot be sure that all limitations supported by the evidence were included in the hypothetical question. A remand will permit the ALJ to more specifically explain his decision in this regard or, if he wishes, solicit additional evidence on the mental health issues. The court will then, if an appeal is filed, be able to avoid guessing at the basis for the decision and can properly exercise the limited judicial review permitted by § 405(g) and afford the deference that is due the Commissioner's decision.

**Conclusion**

On remand, Plaintiff and the agency may further explore any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your

claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for further proceedings.

### Objections

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 28th day of July, 2005.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE